UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                             )
       v.             )   Cr. No. 07-10283 RGS
                             )
2. TODD DONOFRIO         )
    Defendant.        )
                             )

<u>OPPOSITION OF THE UNITED STATES
TO DEFENDANT'S MOTION *IN LIMINE*
TO PRECLUDE CERTAIN TESTIMONY OF S/A MCGOWAN</u>

The defendant has moved in limine to preclude certain testimony by FBI Special Agent Michael McGowan. By letter dated February 16, 2009, the government advised the defendant as follows.

>    The government expects that Special Agent Michael McGowan of the Federal Bureau of Investigation may testify, instead of or in addition to SA Quinn (<u>see</u> Government's letter dated 2/4/09),based on his training and experience, that drug dealers will often conduct surveillance of an area prior to a scheduled drug buy or sale, to look for law enforcement and to make sure it is not a drug ripoff, that drug dealers sometimes separate themselves and the buy money during a drug deal to provide security, and that purchasers and distributors of controlled substances, such as cocaine, often possess and carry firearms, and do so in order to protect themselves, their co-conspirators, and their stored and/or carried quantities of drugs and/or money. The government also expects that S/A McGowan will testify that, in his opinion, Todd Donofrio was conducting surveillance during the buy on July 30, 2007, and that Donofrio's role during the buy was to provide protection for Silvia.

>    S/A McGowan, who was one of the undercover officers in this case, has been a Special Agent with the FBI for approximately 23 years. Prior to that, he was a police officer and did undercover work in that capacity. SA McGowan has done undercover ("UC") work for the FBI for approximately 20 years. He has been the UC Coordinator in the Boston office of the FBI for

approximately 18 years.  S/A McGowan has taught
critical incident training at the FBI's UC school since
2000 and, since approximately that time, he has also
trained Boston Police Department undercover officers.
S/A McGowan also evaluates for the FBI UC operations in
which an officer is killed or there is a ripoff or
attempted ripoff.  S/A McGowan estimates that he has
evaluated at least a dozen such incidents in which an
officer is killed and at least another dozen in which
an officer is not killed.

S/A McGowan has worked drug cases as a UC, off and
on, for over 20 years.  He has also worked organized
crime ("OC") cases.  He estimates that he has been
involved in 50-100 drug investigations and has had over
1,000 UC contacts with targets in drug and OC
investigations.  S/A McGowan estimates that, in most
of the drug investigations he worked there was some
involvement of guns -- i.e., guns were seen, purchased,
seized, or discussed.

See Govt's Letter to Defense dated February 16, 2009.

The defendant seeks to preclude S/A McGowan's testimony

generally but in particular objects to S/A McGowan testifying

that, based on his training and experience, "Todd Donofrio was

conducting surveillance during the buy on July 30, 2007, and that

Donofrio's role during the buy was to provide protection for

Silvia."  Id.

The defendant first objects that the disclosure of this

"expert" testimony was not timely under Fed.R.Crim.P. ("FRCP")

16(a)(1)(G).  The challenged testimony is not expert testimony

under Fed.R.Evid. ("FRE") 702, however, but opinion testimony by

a lay witness under FRE 701.  See, e.g., United States v.

Pinillos-Prieto, 419 F.3d 61 (1st Cir.2005) (affirming, as lay

opinion testimony under FRE 701, admission of police officer's

testimony, that drug organizations often keep their drugs "in a hidden place where they are protected with firearms", and that "the moment when the drugs and money are handed over is the most dangerous part of the work of an undercover agent" because "no one wants to have their drugs stolen; no one wants to have their money stolen"); United States v. Ayala-Pizarro, 407 F.3d 25, 28-29 (1st Cir.2005) (affirming, as lay opinion testimony under FRE 701, admission of police officer's testimony that a certain street was a "drug point", that the heroin sold there was packaged in a certain manner, and "that places which sell drugs are often protected by people with weapons").[1]

Like the officers in Pinillos-Prieto and Ayala-Pizarro, S/A

---

[1] In Ayala-Pizarro, the Court noted that "[t]he line between expert testimony under [FRE] 702 and lay opinion testimony under [FRE] 701 . . . is not easy to draw. Ayala-Pizarro, 407 F.3d at 28-29 (citation omitted). The Court reasoned that the officer's testimony was lay opinion testimony because the officer testified that "he had investigated, patrolled, or made arrests at drug points on more than 100 occasions", and the officer's testimony about what occurred at those drug points was therefore "based on the requisite personal knowledge under [FRE] 602 and also met the requirements of [FRE] 701 because it was based on 'particularized knowledge that the witness [had] by virtue of his . . . position' as a police officer assigned to patrol the neighborhood." Id. (quoting Fed.R.Evid. 701, advisory committee note). The Court also noted that, while the 2000 amendments to Federal Rules of Evidence subjected testimony falling within the scope of Rule 702 to "heightened reliability requirements and rules governing pre-trial disclosure," the officer's testimony did not "trigger these additional safeguards." Id. at 29. The Court concluded: "It required no special expertise for Officer Mulero to conclude, based on his observations, that places which sell drugs are often protected by people with weapons." Id.

McGowan's testimony is (1) "rationally based on the perception of the witness," (2) "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue," and (3) "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  <u>See</u> FRE 701.  Put another way, "[i]t required no special expertise for [S/A McGowan] to conclude, based on his observations," that Donofrio was providing surveillance and security for the drug transaction. <u>See</u> <u>Ayala-Pizarro</u>, 407 F.3d at 29.

Accordingly, S/A McGowan's testimony is not subject to any timing requirements that may be imposed by FRCP 16(a)(1)(G), which, by its terms, covers only FRE 702, 703, and 705 (i.e., those provisions concerning "expert" testimony).[2]  Indeed, since S/A McGowan's proposed testimony is lay opinion testimony, the government was not required to disclose the testimony or the basis for the testimony whatsoever.

The defendant also argues that S/A McGowan's testimony in this regard "is directed at the mental state that accompanied the presence of a firearm behind the back seat of Donofrio's automobile."  Deft's Mot. at 2.  The defendant claims that this testimony violates FRE 704(b) because it goes to the ultimate

---

[2] FRCP 16(a)(1)(G) does not, in any event, have a strict timing requirement.  Rather, it simply states that, upon request, the government shall disclose a written summary of any expert testimony and the basis therefor.

issue which is properly left to the trier of fact.   Id.

Rule 704(b), however, provides that "[n]o *expert witness* testifying with respect *to* the *mental state or condition* of a defendant may state an opinion or inference as to whether the defendant [had] the mental state . . . constituting an element of the crime charged."  FRE 704(b) (emphasis added).  Rule 704(b) does not apply because S/A McGowan is not testifying as an "expert witness" and is not giving an opinion or inference as to whether Donofrio had the mental state constituting an element of the crime.

The applicable rule is Rule 704(a), which provides that, with the exception of subdivision (b), "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  FRE 704(a).

During the deal, S/A McGowan observed Donofrio arrive to the parking lot first in a separate car and circle the lot.  When Silvia arrived, Donofrio parked in location where he would be in position to observe Silvia's meeting with the two UCs.  Silvia referred to Donofrio as his "partner" and said that Donofrio had approximately half the money on him.  At one point, Donofrio walked over to the others, handed over his portion of the buy money, and then immediately returned to his car where he would be in position to observe the UCs providing the cocaine to Silvia.

S/A McGowan's lay opinion, based on 20 plus years of undercover work, and his observations during the deal, is that Donofrio's role in connection with the drug deal was to conduct surveillance and provide security for Silvia.  S/A McGowan's opinion may embrace a subsidiary issue (rather than the "ultimate issue") to be decided by the trier of fact but it does not constitute an opinion or inference as to whether Donofrio's purpose in possessing the firearm was to further the drug trafficking crime.

The defendant also argues that S/A McGowan should be prohibited from truthfully describing his background and experience in the FBI -- specifically, that he is responsible for evaluating undercover operations where an officer is killed. This testimony is relevant because it accurately describes S/A McGowan's experience and helps explain the tactical decisions that he and the FBI team made during the course of the transaction and the arrest.  The defendant states that the relevance of this testimony is outweighed by the risk of unfair prejudice, but does not explain why this testimony unfairly prejudices the defendant.  In the absence of such an argument, this relevant and truthful testimony should be admitted.

Finally, the defendant seeks to preclude S/A McGowan from testifying that there was some involvement of guns in most of the numerous drug investigations in which he worked.  The defendant

6

does not adequately explain why he argues that this testimony is inadmissible but concedes that testimony that guns are "often" used by drug dealers is admissible.  Deft's Mot. at 3.  Moreover, the defendant has indicated that he wants to introduce at trial documents showing the percentage of federal drug cases in which gun charges were also filed.

The defendant cannot have it both ways.  S/A McGowan's testimony is based on his experience and it tends to show that drugs and guns often go hand in hand.  This is hardly a novel concept.  See, e.g., United States v. Green, 887 F.2d 25, 27 (1st Cir.1989) ("This circuit and others have recognized that in drug trafficking firearms have become 'tools of the trade' and thus are probative of the existence of a drug conspiracy."); United States v. Wiener, 534 F.2d 15, 18 (2d Cir.1976) ("Experience on the trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade almost to the same extent as they keep scales, glassine bags, cutting equipment and other narcotics equipment.").  The testimony is therefore helpful to the jury and should be admitted.

For the foregoing reasons, the defendant's motion *in limine* should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:   /S/ PETER K. LEVITT
PETER K. LEVITT
Assistant U.S. Attorney
One Courthouse Way
Boston, MA 02210
(617)748-3355

February 18, 2009

CERTIFICATE OF ECF FILING

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ PETER K. LEVITT
PETER K. LEVITT
Assistant United States Attorney