UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,                            Crim. No. 07-10283-RGS

        V.

TIMOTHY  J. SILVIA

**DEFENDANT'S  SENTENCING MEMORANDUM  AND MOTION FOR  A DEPARTURE PURSUANT TO USSG § 4A1.3 (B) (1) ( CRIMINAL HISTORY SUBTANTIALLY OVERREPRESENTS SERIOUSNESS OF CRIMINAL HISTORY OR RISK OF RE-OFFENSE)**

The following sentencing memorandum is provided to the Court in order to assist the Court in arriving at a just and appropriate sentence. The defendant reserves the opportunity to make additional comments through counsel at the time of sentencing.

**I.      OVERVIEW**

On October 21, 2008, Timothy Silvia, pled guilty to count 1s of the three count superceding indictment charging him with Conspiracy to Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 846 which carries a 10 year mandatory sentence pursuant to 21 U.S.C. § 841 (b) (A).  The criminal activity in question took place on July 30, 2007, when he was arrested along with co-defendant Todd Donofrio, in a failed attempt to purchase up to  10 kilograms of cocaine from undercover FBI agents.

**II.      BASED ON *BOOKER*, *KIMBROUGH* AND *GALL* THE SENTENCING GUIDELINES ARE ONLY ONE OF THE VARIOUS FACTORS THE COURT SHOULD CONSIDER IN ARRIVING AT AN APPROPRIATE SENTENCE**

1

Prior to the United States Supreme Court decision in United States v. Booker, 543 U.S. 220 (2005), the Sentencing Guidelines were mandatory. Practically speaking, this meant that the sentencing courts were required first to determine the applicable guideline range and then sentence defendants within that range. The Sentencing Guidelines did provide for technical departures which were granted sparingly except in cases where the defendant provided substantial assistance to the Government pursuant to USSG § 5K1.1. Factors such as age, education, mental and physical condition, employment record, and family ties and responsibilities were discouraged as grounds for formal departure. (See USSG  § 5H1.1 through 5H1.6).  Lack of guidance as a youth [see § 5H1.12] was specifically prohibited as a ground for departure. In addition, "the history and characteristics of the defendant [18 USC § 3553 (a)(1)] were deemed largely irrelevant with respect to sentencing.

The Guidelines were implemented in 1987 with an avowed purpose to promote uniformity in sentencing across the country and to "avoid unwarranted sentence disparities among defendants wit similar records who have been found guilty of similar conduct [18 USC § 3553 (a)(6)]."  The actual effect of the mandatory guidelines was to limit the ability of District Court Judges to craft individualized justice based on the totality of the circumstances in a particular case.

Booker, and more recently, Gall v. United States, 128 S.Ct. 586, and Kimbrough v. United States, 128 S.Ct. 558 (2007), have dramatically changed the sentencing process. See also, United States v. Martin, 520 F.3d 87 (1st Cir. 2008); United States v. Rodriquez, 2008 WL 2265898 (1st Cir. 2008).  While District Judges must still calculate the applicable guidelines, it is but the first step in the sentencing process. The advisory guidelines are now only one of seven factors set forth in 18 USC § 3553 (a) that the Court must consider in determining the sentence.[1]

---

[1] The sentencing factors set out in 18 USC 3553 (a), are as follows: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed--(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence available; (4) the kinds of sentence and the sentencing range established

In <u>Gall</u>, the Supreme Court set forth a deferential abuse of discretion standard which affords district courts significant latitude when determining the appropriate sentence:

> "We reject, however, an appellate rule that requires "extraordinary"
> circumstances  to justify a sentence outside the Guidelines range.
> We also reject the use of rigid mathematical formula that uses the
> Percentage of a departure as the standard for determining the strength
> of the justifications required for a specific sentence."

Succinctly, <u>Gall'</u>s message is that the Guidelines are truly advisory and only one of the § 3553 (a) factors to be considered in arriving at an appropriate sentence. To deviate from the Guidelines the circumstances need not be "extraordinary"; rather, District Court judges now have a mandate to consider the totality of the circumstances involved in the case and to tailor the sentence accordingly.

## III.    THE DEFENDANT IS IN AGREEMENT WITH THE PROBATION OFFICER'S GUIDELINE CALCULATIONS

In the Presentence Investigation Report (hereafter PSR), the Probation officer found that Mr. Silvia's offenses had a base guideline offense level of 32, adjusted 3 levels downward for his prompt acceptance of responsibility, for a total offense level of 29. (PSR ¶¶  (66)-(68). Matched with his Criminal History Category, the defendant's advisory guideline "Career Offender" status equates to a level of 34, with the 3 level acceptance adjustment. (PSR ¶ ¶ ( 69)-(72).  The resulting advisory guideline imprisonmen range is thus 262-327 months, or 21.8 to 27.2 years.

---

for--(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--(i) issued by the Sentencing Commission pursuant to 28 USC  994 (a)(1) and (6), the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

There was no plea agreement entered into by the defendant and the Government. While the defendant does not dispute the calculations made by the Probation Department, he does have the right to submit this request for a sentence below the applicable guideline range.

## IV.        ANALYSIS OF THE 3553 (a) SENTENCING FACTORS

Based upon United States v. Booker, 543 U.S. 220 (2005), and more recently Gall v. Untied States, 128 S. Ct. 586 (2007), and Kimbrough v. United States, 128 S.Ct. 558 (2007), the Sentencing Guidelines are now advisory and only one of the § 3553(a) factors which the Court must consider when arriving at an appropriate sentence.  Furthermore, in Gall, the Supreme Court clearly stated that the circumstances of a case need not be extraordinary to justify a sentence outside of the advisory guidelines. The following analysis of the sentencing factors in Mr. Ordway's case is hereby provided:

_The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant_

Although much regarding the nature of the offense and the defendant's history and family information is contained in the PSR, including a depiction of the horrendous family circumstances in which he was raised, (PSR  ¶¶ (148)-(151), pp. 64-65), it is important for the Court to note that the defendant's most recent venture into criminal behavior was the result of his falling prey to an FBI sting operation where the undercover agents offered broad enticements to the defendant, assuring him they could provide anything from an outlet for stolen vehicles and automobile insurance scams to supplying any manner of controlled substance.  Mr. Silvia, swallowed the bait, and now faces the following dire predicament: an advisory sentence  almost three times the already significant ten year mandatory minimum jail term he would face without his criminal history score

In Gall, much of the District Court's rationale for sentencing the defendant to probation, despite an advisory guideline range of 30 to 37 months, was the fact that with the exception of his criminal conduct, his life experiences were essentially positive.  What  is  significant  in  the District Court's decision to sentence Gall to probation is that the decision was largely influenced

4

by the "history and characteristics of the defendant," factors which under the former USSG sentencing scheme were disregarded.

The difference between these cases is that, unlike Mr. Gall, this defendant never really had a chance to have a normal life. According to the report authored by pre-eminent forensic psychiatrist, Dr. Bernard S. Yudowitz, (attached and incorporated herein as Exhibit "A"), the neurological damage he suffered at birth plus the brain injuries caused by the horrendous domestic abuse and his early severe automobile accidents, resulted in " faulty neurological pathways in the brain [which] affect[ed] the ability to develop the social skills necessary to conform to societal norms. This usually leads to antisocial behavior, as is seen in Mr. Silvia's case."  Simply put, his prior criminal activity, particularly involving violent behavior, has, in the opinion of Dr. Yudowitz, is based upon  psycho-neurological  damage which should serve to mitigate and diminishe, it is respectfully submitted, the impact of his prior criminal history to the point that the Court can easily depart downward from the "advisory" guideline calculation.  The criminal history score as outlined in the PSR wholly "over-represents the seriousness of the defendant's criminal history or the likelihood that he will commit other crimes." USSG § 4A1.3(b) (1).  Further, with respect to any potential risk of future similar behavior Dr. Yudowitz opines that there are "new developments in psychiatric modalities such as cognitive behavioral therapy together with a new class of antidepressants [which] have been shown to be very helpful in cases such as Mr. Silva's." (Ex. "A," p. 2).

Gall sends the clear, powerful message that a defendant's "history and characteristics" really do matter, and in the right case, can tip the scales toward a substantially reduced sentence. While Gall involved a defendant's past good deeds, the same logic would apply when a defendant, such as Mr. Silvia, stands before the Court with a significant criminal record, but one that can be explained and mitigated by the factors he has presented. Essentially the Court's rationale is the same: if there is a valid and substantial basis for the departure from the guideline calculations based upon the defendant's history and characteristics it should be applied. It is in the spirit of Gall that Mr. Silvia   asks the Court   to consider his criminal history in light of the neurological factors which were its essential cause, and to keep in mind  that with proper medical care he will likely never repeat his criminal behavior, particularly   after serving a ten year sentence which includes psychiatric care and proper medication.  Upon his release from federal

5

prison at the age of 54, appropriate continuing psychiatric care and medication during his supervised release will, it is submitted,  ensure this Court to a satisfactory degree that he will not be a  risk to re-offend.


*The need for Just Punishment*

Prior to the <u>Booker</u> and <u>Gall</u> decisions, sentences in Federal cases were based on quantifying the criminal conduct in question with an evaluation of the defendant's relative role in the case. The degree of guilt and the resulting sentence was typically based on a somewhat mechanical application of the then mandatory guidelines.  Now, however, in the post-<u>Booker</u>, post-<u>Gall</u> climate, District Court judges once again have the right and duty to be "judges," to weigh the actual seriousness of the crime and to evaluate the actual harm caused by the crime.

The harm caused by Mr. Silvia's criminal conduct in this case was, it is submitted, fairly minimal as there was no way that he could have purchased or distributed the cocaine offered by the undercover agents.


*The Need for Adequate Deterrence*

An obvious reason for punishing Federal offenders is the goal of deterrence. Based upon the information supplied by Dr. Yudowitz, and, again, assuming a period of ten years in a federal prison with appropriate psychiatric care,  this Court can be reasonably assured that there is minimal risk that he will re-offend.  Therefore, individual or personal deterrence in the form of a twenty one to twenty seven year term of imprisonment is not necessary here; nor, given the highly unique circumstances of this case and this defendant, does the example of his incarceration lend any support for the notion that putting him in jail for over two decades will have some sort of general deterrent effect.


*The Need to Protect Society from Further Crimes on the Part of the Defendant*

A prison term of ten years is all that is necessary to protect society from further crime on Mr. Silvia's part.  Again, if he receives, finally, the necessary psychiatric care there is minimal risk that he will  re-offend.

*The need to Provide the Defendant with Necessary Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner*

Again as set forth in the letter from Dr. Yudowitz, Mr. Silvia is in need of psychiatric care and antidepressant medication. It is requested that in its sentence the Court recommend that he be incarcerated in a Federal Medical Center  which has the facilities to provide the necessary medical treatment.

*The Kinds of Sentences Available*

Under the advisory guidelines, Mr. Silvia's offense level is 34, or 262 to 327 months. Under Booker, Kimbrough, and Gall, the Court may sentence this defendant outside of the applicable advisory guidelines based on the § 3553 (a) factors addressed above. The sentence must be "reasonable" based on the District Court Judge's application of these factors.

*The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct*

What makes this case unusual, and sets it far apart from the "mine-run" of Federal cases is the fact that Mr. Silvia has a medical and psychiatric conditioin which mitigates his past criminal behavior and which, if he is given proper treatment in the future, is likely to remove the anti-social and violent reactions which have heretofore ruled his life. The Court is asked to consider that his neurological damage caused him to react to situations in a manner that he had no control over. Given all of the circumstances, it is submitted that his damaged psychological condition should not doom him to what amounts to most of the rest of his life in prison. Ten years is more than enough punishment..

*The Need to Pay Restitution*

Financial restitution is not an issue in this case.

7

*Final Comments on 3553 (a) Factors*

Viewed in their totality, the 3553 (a) factors in this case justify a sentence well below the guideline calculation. Again, the sentence of ten years mandated by the activity and the applicable statute in question is punishment enough. The Court can address any concerns it may have involving the defendant's' post-imprisonment conduct by imposing specific conditions requiring continued psychiatric evaluation and treatment during the period of his supervised release.

## V.        CONCLUSION

In arriving at a just and appropriate sentence, this Court is respectfully asked to examine the totality of the factors present in this case and to give due consideration to Mr. Silvia's background and circumstances. If the Court does that it will  realize the excessiveness of the imposition of a sentence within the advisory guideline range. With appropriate medical care he will not pose the kind of threat to the community that requires his incarceration for two and a half decades. Ten years, as mandated by his unachievable drug activity, is more than a sufficient punishment for his actions.

Dated: July 25, 2009                          Respectfully submitted,
                                              TIMOTHY J. SILVIA
                                               by his attorney,

                              Anthony M. Cardinale   Digitally signed by Anthony M. Cardinale
                                                     DN: CN = Anthony M. Cardinale, C = US, O = Law Office Of
                                                     Anthony M. Cardinale
                                                     Date: 2009.07.25 09:22:09 -04'00'

                                              Anthony M. Cardinale
                                              BBO # 073460
                                              655 Summer St.
                                              Boston, Massachusetts   02110
                                              (617) 345-5400

Certificate of Service
I hereby certify that this document(s) filed through the ECF system
will be sent electronically to the registered participants as
identified on the Notice of Electronic Filing (NEF) and paper
copies will be sent to those indicated as non registered participants
on 7/25/09.

8