```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


  * * * * * * * * * * * * * * *
  *UNITED STATES OF AMERICA    *
                               *   CRIMINAL ACTION
              v.               *   No. 07-10283-RGS-1
  *                            *
  TIMOTHY J. SILVIA            *
                               *
  * * * * * * * * * * * * * * *




           BEFORE THE HONORABLE RICHARD G. STEARNS
                  UNITED STATES DISTRICT JUDGE
                           DISPOSITION
                        August 26, 2009


  APPEARANCES:

         UNITED STATES ATTORNEY'S OFFICE, (By AUSA Peter
  Levitt) 1 Courthouse Way, Suite 9000,  Boston,
  Massachusetts  02210, on behalf of the United States of
  America

         LAW OFFICES OF ANTHONY M. CARDINALE, (By Anthony M.
  Cardinale, Esq.) 665 Summer Street, Boston,
  Massachusetts  02210, on behalf of Defendant




                                Courtroom No. 21
                                1 Courthouse Way
                                Boston, Massachusetts 02109


                    James P. Gibbons, RPR, RMR
                      Official Court Reporter
                   1 Courthouse Way, Suite 7205
                    Boston, Massachusetts  02210
                        jmsgibbons@yahoo.com
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1                    P R O C E E D I N G S
 2              THE CLERK:  All rise for the Honorable Court.
 3         Court is open.  You may be seated.
 4              The case before this Court carries Case
 5    No. 07-10383, United States of America versus Timothy
 6    Silvia.
 7              Would counsel please identify themselves for the
 8    record.
 9              MR. LEVITT:  Peter Levitt on behalf of the
10    government.  Good afternoon, your Honor.
11              MR. CARDINALE:  Good afternoon, your Honor.
12    Anthony Cardinale on behalf of the defendant, Tim Silvia.
13              THE COURT:  I have, in addition to the
14    presentence report, a sentencing memorandum filed actually
15    by both sides, as well as a report by Dr. Utiwicz [ph.] the
16    examining psychiatrist.
17              As I understand it, we're not really looking at a
18    dispute about the advisory Guideline range, although there
19    is a factor of a mandatory sentence that's implicated as
20    well as a career criminal offender finding.  The defendant
21    has one of the longer criminal record I think I've ever
22    seen, both as a state and a federal judge, and that record,
23    to a large degree, drives the Guidelines range, which I
24    understand we all agree is correctly calculated at 262 to
25    327 months, that the Criminal History Category, of course,
```

PDF created with pdfFactory trial version www.pdffactory.com

```
1    is VI, given the 35 criminal history points.
2              So starting with that as a basis, Mr. Levitt,
3    typically the government goes first with its thoughts about
4    the case.
5              MR. LEVITT:  Your Honor, the government's
6    recommendation is 262 months.  Sort of the bottom line, from
7    the government's perspective, is that there is really no
8    principled way to go below 20 years in this case.  And the
9    Court is correct, that really the sentence here is almost
10   exclusively driven by the criminal record.  It is the -- I
11   have been doing this for about nine years.  It's easily the
12   worst record I have seen.  I've also made some informal
13   inquiries around my office, and it may be a record for our
14   office.
15             The defendant has 238 entries on his criminal
16   history record.  There's four career offender predicates
17   that are scoreable.  I count at least another eight career
18   offender predicates that are not scoreable simply because
19   they're timed out, which may be because the defendant was in
20   jail for most of the last ten years, or a good portion
21   thereof.
22             A few things I'd like to point out about the
23   record.  One is that the defendant has done considerable
24   time in prison.  Oftentimes when we get to federal court the
25   defense argument is, Look, the defendant has a bad record,
```

```
 1    but he's never really done hard time; and, you know, it's
 2    not fair to jump up to the kind of federal sentences that we
 3    see in this court, because he has never really done hard
 4    time, so he doesn't -- he's never had that deterrent.
 5              Here, the defendant has.  He did three years in
 6    2003.  That was for an assault battery with a dangerous
 7    weapon, a case in which he beat a woman over the head with a
 8    pool stick.
 9              He did four years in 1996 for attempted murder.
10    That case involved assaulting a woman with a gun and a
11    knife.
12              He was convicted of escape in 1996 and ended up
13    doing two years in prison on a probation violation for that
14    in '94.
15              Eight years in state prison starting in 1988.  That
16    was a kidnapping and assault with a dangerous weapon.
17              Twenty-six months in 1993 for assaulting an
18    individual and a girlfriend, threatening to kill them.
19              Another six months in '94.
20              Another one year in '96.
21              Another one year in 1989.
22              He was on probation when he committed the offense
23    in this case and had been out of jail for less than a year.
24              Over the past 29 years, I'm not sure that the
25    defendant has ever spent any time in which he was not under
```

PDF created with pdfFactory trial version www.pdffactory.com

1      some sort of criminal justice sentence, and, not
2      withstanding that, continued to commit crimes.
3              The other relevant factor which goes sort of along
4      with his criminal history is his role as a former president
5      of the Brockton Chapter of the Outlaws Motorcycle Club.  The
6      history of the violence associated with that club is well
7      delineated in the Bowman case, which the government cited.
8      And the tape recordings in this case, where he corroborates
9      his role, basically, as a leader in criminal activity in the
10     south of Massachusetts where he repeatedly talks about the
11     fact that he's the boss out there, that it's his area, and
12     threatens people who suggest that it's not.
13             Of course, there are also the statements, recorded
14     statements he made, about having already done 20 years in
15     jail, and that he's going to shoot it out with the police,
16     going out in a blaze of glory, and beating up drug dealers,
17     robbing drug dealers, you know, the type of statements that
18     you might otherwise say were puffery if not for the fact
19     that his criminal record bears them out.
20             So I think really the only issue here is the
21     medical report, and I'd say two things about Dr. Utiwicz's
22     report:  One is that it's just insufficient on its face to
23     really have any impact whatsoever.
24             Dr. Utiwicz met with the defendant on one occasion.
25     He ordered no testing whatsoever, no CAT scan, no MRI.  He

PDF created with pdfFactory trial version www.pdffactory.com

1      looked at his elementary school records, a couple of medical
2      records, and drafted what essentially is a page-and-a-half
3      report, and in that report he said that most likely the
4      defendant was neurologically damaged at birth, "most
5      likely," and that that was probably made worse through all
6      the fights and beatings he's been involved in, and that it's
7      "quite possible," are the words, "that proper treatment
8      might help him in the future."
9              So it's a report based on no examination
10     whatsoever, which just really makes tentative conclusions
11     about what might have caused Mr. Silvia to be such a violent
12     person, but nothing that would give the Court, I suggest,
13     any comfort that the public is going to be protected from
14     this defendant.
15             And that's really the second point, and that's what
16     it comes down to.
17             Even if Dr. Utiwicz had interviewed Mr. Silvia on
18     multiple occasions, done CAT scans and MRIs, and done a real
19     significant report, it really wouldn't matter at all.
20             And I suggest if you look at Section 5K2.13, the
21     "diminished capacity provision" of the Guidelines, and I
22     understand that this is not a Guidelines' argument for a
23     departure, it's a deviation-type argument, but, by analogy,
24     it helps the Court understand why, I think, the Commission
25     took this position.

PDF created with pdfFactory trial version www.pdffactory.com

```
 1              The Commission's position on downward departures
 2   for diminished capacity was that they are not allowable if
 3   the defendant's criminal history indicates a need to
 4   incarcerate the defendant to protect the public.
 5              I can't think of a case in which that was more true
 6   than this case.
 7              Yesterday I was before Judge Woodlock on a
 8   sentencing, or a plea, I should say, of an individual named
 9   Rafeal Christobol.  It was a C plea to 15 years.
10              Mr. Christobol was a 22-year-old gang member.  He
11   had two career offender predicates, one an assault and
12   battery, one a drug distribution, and he sold over 50 grams
13   of crack.  If Rafeal Christobol is facing 15 years, Tim
14   Silvia cannot be looking at less than 20.
15              Todd Donofrio's being sentenced next.  His record
16   is nothing like Mr. Silvia's.  Mr. Donofrio -- the low end
17   of Mr. Donofrio's Guidelines range is 14 years.  He also has
18   a ten-year mandatory minimum.  So realistically he's looking
19   at a sentence somewhere in between there, if he gets, say,
20   12 years.  Again, anything less than 20 for Mr. Silvia is
21   disproportionate, it doesn't work, because Mr. Silvia's
22   record is so much worse.
23              He was -- his role as a leader in the gang and his
24   role as the primary on this drug deal, all, in the
25   government's view, suggest there is no principled way to go
```

PDF created with pdfFactory trial version www.pdffactory.com

1    below 20 years.  The government's recommendation is the 262
2    months.
3            Thank you.
4                 THE COURT:  Mr. Cardinale.
5                 MR. CARDINALE:  Good afternoon, your Honor.
6            On a housekeeping note, first, in reviewing the
7    documents in preparation for today's sentencing, I noticed
8    that I promised Mr. Renaldi a financial statement from my
9    client.  I have one.  I had him do it downstairs and sign it
10   in court.  So I have it for submission to the Court, to the
11   extent -- just to make the record clear that there is a
12   financial report.
13           If I may submit this to your clerk?
14                THE COURT:  Yes.  Could I see it, please.
15           (Document handed to the Court.)
16                MR. CARDINALE:  The bottom line, as far as
17   this is concerned, is he has no assets.  And for purposes of
18   any particular issue before this Court, such as a fine, I
19   think that the document is self-explanatory, but I wanted to
20   make sure it was put before the Court.
21           This is, obviously, a very difficult circumstance
22   for my client to be in and for me to be in, and this is, you
23   know, obviously one of the hardest, if not the hardest,
24   things that individuals in your position, Judge Stearns,
25   have to deal with, and that is finding the appropriate

PDF created with pdfFactory trial version www.pdffactory.com

1      sentence in the circumstances presented.
2               In looking at the defendant's record, I recognize
3      its breadth, its length.  Unfortunately, I stand before the
4      Court to tell the Court and brother counsel I have seen
5      worse.  I don't know that that's the measure of what we're
6      here to do, whether it's something the U.S. Attorney's
7      Office is considering a record, or certainly this Court's
8      experience is a meaningful measure in terms of what should
9      be done in this sentencing.
10              But having in mind that we are no longer
11     constrained by the Guidelines, and that under Booker and the
12     rest this Court can impose a sentence that it deems
13     appropriate without being bound to the imposition of a
14     career criminal offender sentence, I have to say to the
15     Court that I wouldn't bother this Court, nor would I ask it
16     to engage in the kind of thought and consideration that I'm
17     going to ask it to engage in, if we were under the old
18     Guidelines.  It would be simply that they get imposed and
19     that's the end of that.
20              But with the advent of Kimbrough and the rest, this
21     court has an opportunity to look behind this particularly
22     heinous criminal record and look for a basis that it may
23     say, Okay, I can see where something like this is coming
24     from.  And the bottom line is that I agree with the
25     government.  Deterrence is not an issue in the sentencing

PDF created with pdfFactory trial version www.pdffactory.com

1    criteria here, because under his present circumstances,
2    without significant psychiatric assistance and
3    pharmacological assistance, there isn't a sentence in the
4    world that's going to change and that's going to deter
5    Mr. Silvia.  He is a violent human being.  The question is,
6    Why is he violent and what can be done to safeguard the
7    community from him?
8              I know my brother makes light f the fact that
9    Dr. Utiwicz saw my client once.  He did not know how much --
10   what the records were that he has reviewed.  I suggest to
11   the Court, having supplied those records, that it was a
12   voluminous amount of material, and I would certainly -- to
13   the extent this Court wishes, we could have a hearing.  We
14   could bring Dr. Utiwicz in.  You can examine Dr. Utiwicz.
15   We can examine the documents he went over.  I can say to the
16   Court, as an officer of the court, that in talking to Dr.
17   Utiwicz, who I believe to be one of the best and foremost
18   experts in this area, after reviewing the records and
19   discussing, spending several hours with my client, he
20   suggested that he really didn't need to order a PET scan or
21   a CAT scan, because to him it was obvious.  The conduct that
22   he saw from the school records, starting from his earliest
23   school records, to his latest events where he finds himself
24   before this Court, show a progression of activity.  When
25   it's coupled with what his records, school records, showed

PDF created with pdfFactory trial version www.pdffactory.com

1     about the way he acted, which was likely the result of brain
2     damage at birth, with the information concerning the head
3     injuries he suffered both as a young child being knocked out
4     several times by his father and then his stepfather, coupled
5     with several major, major automobile and motorcycle
6     accidents which resulted in brain and head injuries, he
7     suggested to me he didn't need to do a CAT scan; that he had
8     sufficient experience in dealing with this type of
9     defendant, particularly in his 39 years where he's basically
10    devoted his life to the study of the cause of criminal
11    behavior, that he felt comfortable issuing the report that
12    he did.  And that is that Dr. Utiwicz believes that the
13    brain damage and the background of my client from early
14    childhood is the reason why he cannot control himself and
15    reacts in ways that are much more violent than anyone
16    should, and which explains this lengthy record.  He is just
17    incapable of controlling his emotions in regard to violent
18    outbursts.  It is that simple.
19            And that is not a choice on his part.  That is the
20    result, I suggest to the Court, of a condition.  But it's a
21    result of a condition that can be treated.  It has never
22    been treated, and I suggest to the Court that 22 years in
23    prison is simply putting him in a warehouse.  And it
24    certainly does protect society, and that is an obvious goal
25    of sentencing, an appropriate goal of sentencing.  I really

PDF created with pdfFactory trial version www.pdffactory.com

1    think it's almost inhumane to consider a sentence that is
2    just simply, Let's put him in a warehouse, we can keep him
3    away until he is 66 years old, or thereabouts, and hopefully
4    by then when he gets out, he won't be violent any more, or
5    he will be dead, because he does have significant medical
6    issues that have to be -- I will address when I make a
7    recommendation to the Court about place of confinement,
8    because he has significant physical difficulties that have
9    been noted in presentence report.
10           But, again, I think if our system is to have any
11   soul, if you will, if the system of sentencing is to be
12   based on something other than simple and rank punishment and
13   warehousing, this Court needs to consider what Dr. Utiwicz
14   had to say on this score; and that is this is not an
15   individual that we just need to throw away and hide away,
16   but this is an individual who could benefit from psychiatric
17   help, both in terms of pharmacology and in terms of just
18   general psychiatric assistance, something he's never had.
19   And I'm going to ask the Court to make sure that wherever he
20   is sent for the minimum of ten or whatever sentence this
21   Court deems appropriate, that he go to a medical facility
22   capable of taking care of him both physically, which he has
23   significant issues with, as well as mentally, which is the
24   reason we are standing here today.
25           As far as the activity in question, I think the

PDF created with pdfFactory trial version www.pdffactory.com

1      Court -- obviously, but for his record, the activity, it
2      seems to me, on a fair analysis, was a lot of puffing.  This
3      was an individual who would tell the undercover agents
4      anything in an effort to make himself seem bigger than life,
5      to impress them, and to encourage them to deal with him.
6              And despite all the bravado and puffing, including,
7      I believe my brother has mentioned in his sentencing report,
8      one point where he quotes my client as saying, he's also
9      expressed his enthusiasm for doing big deals stating, "I'm
10     always game.  Seriously, my money's always there."
11             That's typical of the kind of puffery that went on
12     because, indeed, when the time came he hadn't enough money,
13     couldn't raise enough money, had to bring a trailer full of
14     items to have the agents hold.  And the bottom line is that
15     if this -- but for his record, and the kind of conspiracy
16     this was, which was obviously unattainable, ten years is
17     plenty.  The ten year mandatory minimum for a conspiracy
18     that was not in any way, shape, or form capable of being
19     performed is more than enough punishment, more than enough
20     time, to put him away and isolate him from society for his
21     crime.
22             Now, we have to look at, What do we add to that in
23     terms of his record?  And, again, while these Guidelines
24     exist and they inform the Court, I would suggest to the
25     Court that, given all the circumstances, that a 22-year term

PDF created with pdfFactory trial version www.pdffactory.com

1    of imprisonment is excessive.  No matter how long his
2    sentence is, provided this Court, what sentence it gives
3    lower than the 22 years, and I would suggest to the Court
4    with all the sincerity I can muster that a sentence between
5    10 and 20 is much more appropriate than the 22 years,
6    provided that sentence has as a condition that he receive
7    appropriate medical and psychiatric care, and that the five
8    year continuing supervision that he would have also is
9    conditioned upon continued psychiatric care and treatment.
10           I think that's all this Court can do, and in
11   doing -- and in imposing a sentence like that, I think that
12   you're performing the highest of all functions, and simply
13   not throwing this individual away, if you will; not just
14   warehousing him for 22 years and hoping he dies in the
15   interim in order to protect society.  There's another way to
16   accomplish that goal, and I believe that the sentence and
17   the conditions that I've suggested to the Court would do
18   that.
19           Alternatively, I would ask if the Court has any
20   concerns about Dr. Utiwicz's finding, that we adjourn and
21   that we bring Dr. Utiwicz in, we bring his records in, and
22   we have a hearing, and this Court can hear for itself the
23   basis, and the -- not just the basis of Dr. Utiwicz's
24   opinion, but why he feels so strongly that this is a matter
25   that the defendant has no control over and shouldn't simply

PDF created with pdfFactory trial version www.pdffactory.com

```
 1    be punished because of.
 2            Thank you, your Honor.
 3                THE COURT:  Mr. Silvia, would you like to be
 4    heard by the Court?  You're not required to speak, but you
 5    have the right if you choose.
 6            (Whereupon, the defendant and his counsel
 7    conferred.)
 8                THE DEFENDANT:  Well, I mean, I agree with
 9    what they say, but that's about all I can really say.
10            I don't know.  Like he said, this whole case is
11    kind of nuts.
12            What can I really say, you know?  It happened.  I
13    mean the only person that's really going to pay is my boy.
14            That's all I can say.
15                THE COURT:  I take no particular pleasure in
16    this, but this is a case where I think the Guideline
17    recommendation is the appropriate one, and let me say this.
18            I have a lot of respect for Dr. Utiwicz, and I have
19    seen his work before.  I think he gives as good an
20    explanation as one could give as to why Mr. Silvia is who he
21    is and what explains this.  You have more experience than I
22    have, Mr. Cardinale, and I'm sure you have seen worse, but
23    this is about as bad as I have seen, not just in terms of
24    its length, but in terms of the kind of crimes it reflects.
25    And I do understand from what Dr. Uticicz says why it's
```

Case 1:07-cr-10283-RGS   Document 131   Filed 04/05/10   Page 16 of 20

16

```
 1    occurred.
 2            What gave me pause is how careful Dr. Utiwicz is in
 3    really telling us that he doesn't have an answer.  He tells
 4    us that there have been some advances in antidepressants and
 5    medical treatment that have been, as he says, helpful in
 6    cases like Mr. Silvia's, and he says that with the proper
 7    treatment it's quite possible that Mr. Silvia would improve.
 8            Given this record, again, I don't think the issue
 9    is punishment; it's incapacitation.  I have to see that
10    society is protected, and I can't really do very much with a
11    "quite possible" diagnosis.
12                MR. CARDINALE:  I think that's the best any
13    psychiatrist could say under the circumstances without
14    having the opportunity to have treated him.  It may be that
15    in five years from now, if he did get appropriate treatment,
16    that would be the time to revisit this issue, but here we
17    are.
18                THE COURT:  Yes.  But that's why I have so
19    much respect for Dr. Utiwicz, because he is careful.
20                MR. CARDINALE:  Yes.
21                THE COURT:  Mr. Silvia, pursuant to the
22    Sentencing Reform Act of 1984, and having considered the
23    sentencing factors set out in 18, United States Code,
24    Section 3553(a), it is the judgment of the Court that you be
25    committed to the custody of the Bureau of Prisons for a term
```

PDF created with pdfFactory trial version www.pdffactory.com

1  of 262 months.
2          The Court will makes a recommendation that the
3  Bureau of Prisons place you in a facility, commensurate with
4  security, where you are best able to obtain the medical and
5  psychiatric treatment that I think you desperately need.
6          Upon release from custody, you will be placed on
7  supervised release for a term of five years.
8          Within 72 hours of release from custody, you must
9  report to the probation office in the district to which you
10 are released.
11         The Court will not impose a fine.  Even without
12 seeing the financial statement, pursuing a fine, I think, is
13 a futile gesture in this case.
14         While on supervised release, you will comply with
15 the following terms and conditions:  You will not commit any
16 federal, state, or local crime; nor will you illegally
17 possess a controlled substance.
18         You will refrain from any unlawful use of a
19 controlled substance.
20         You will submit to one drug test within 15 days of
21 release from custody, and at least two periodic drug tests
22 thereafter, not exceeding 104 tests per year, as directed by
23 the Probation Office.
24         You are required by law to submit, at the direction
25 of the Probation Office, to the collection of a DNA sample.

PDF created with pdfFactory trial version www.pdffactory.com

```
 1         You will, further, comply with the standard
 2   conditions adopted by the court and described in United
 3   States Sentencing Guidelines Section 5D1.3(c), and the
 4   following special conditions:  You are prohibited from
 5   possessing a firearm, destructive device, or other dangerous
 6   weapon.
 7         You will not, if ordered to do so by those who are
 8   treating you, consume any alcoholic beverages.
 9         You will participate in a substance abuse
10   counseling program as directed by the United States
11   Probation Office.  That program, again, may include testing,
12   not to exceed 104 drug tests per year, to determine whether
13   you have reverted to the use of alcohol or drugs.  You may
14   be required to contribute to the cost of services for such
15   treatment based on your ability to pay or the availability
16   of a third-party payor.
17         You will, further, participate in a mental health
18   program for treatment as directed by the Probation Office.
19   Again, you may be required to contribute to the cost of
20   services for such treatment.
21         It is further ordered that you pay to the United
22   States a special assessment of $100.  That is due
23   immediately.
24         All right.  The clerk will advise Mr. Silvia of his
25   right of appeal.
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1                THE CLERK:  Mr. Silvia, you have the right to
 2   file a Notice of Appeal in this case.  If you do wish to
 3   file that Notice of Appeal, you must file it within ten days
 4   from the date on which I enter the judgment.  If you cannot
 5   afford an attorney to file the appeal on your behalf, you
 6   may request me to do it, and I will file it in the Clerk's
 7   Office for you.
 8                THE COURT:  Good luck, Mr. Silvia.
 9           Mr. Cardinale, I appreciate your best effort in
10   this case.  As I would have liked to have done something
11   different, I could not be persuaded, but I think it served
12   all of us better that you put the effort into this that you
13   did.
14                MR. CARDINALE:  I understand, your Honor.
15                THE COURT:  We will be adjourned on this
16   matter.
17                THE CLERK:  All rise.
18           (Proceedings adjourned.)
19
20
21
22
23
24
25
```

PDF created with pdfFactory trial version www.pdffactory.com

**C E R T I F I C A T E**

     I, James P. Gibbons, Official Court Reporter for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

/s/James P. Gibbons                April 5, 2010

_____
James P. Gibbons

JAMES P. GIBBONS, CSR, RPR, RMR
Official Court Reporter
1 Courthouse Way, Suite 7205
Boston, Massachusetts 02210
jmsgibbons@yahoo.com

PDF created with pdfFactory trial version www.pdffactory.com